MUNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABBIDULA RANDLE-EL )<br>        Plaintiff, )<br> )<br>v. )<br> )<br>CITY OF CHICAGO AND CHICAGO )<br>POLICE OFFICERS JAEHO JUNG, )<br>Star #13387, and JEFFREY FRAHM, )<br>Star #5904, )<br> )<br>        Defendants. ) | Case No. 13 cv 6607<br><br>Judge Sharon Johnson Coleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Abbidula Randle-El sued the City of Chicago and Chicago police officers Jaeho Jung and Jeffrey Frahm (collectively "Defendants") alleging a violation of 42 U.S.C. § 1983 due to illegal search and seizure, false imprisonment, conspiracy to deprive Randle-El of his constitutional rights, violation of his equal protection rights, and malicious prosecution. Before the Court is Randle-El's amended objection to Magistrate Judge Valdez's order denying Randle-El's motion for partial reconsideration. For the reasons set forth, Randle-El's objection is overruled and the Magistrate Judge's order is affirmed.

**Background**

Randle-El was arrested on December 13, 2011, and charged with solicitation and distribution of cigarettes, possession of drug paraphernalia, and possession of less than five grams of methamphetamine. The prosecution eventually dismissed the charges on its own motion and Randle-El filed the instant civil rights lawsuit. (Dkt 1).

Randle El's counsel, Jared Kosoglad, was conducting the considerably contentious deposition of one of the arresting officers, Defendant Frahm, when he discovered Jung signaling Frahm to check his cellular phone. Kosoglad, stated, "You guys are sending each other messages during the deposition, you know." Defense counsel, Brian Kolp, denied the allegation. The following occurred on the record:

"BY MR. KOSOGLAD:

1

Q. Officer Jung just indicated that you should check your phone. Did you check your phone and see a message from Officer Jung?

A. Is that a question?

Q. Yes.

A. Yes.

Q. What did he say to you?

A. Can I answer it?

MR. KOLP: No. Just answer the questions. Slow down.

MR. KOSOGLAD: Can you see the message he sent?

MR. KOLP: No, you can't.

MR. KOSOGLAD: I'm asking to see the messages he sent.

MR. KOLP: The witnesses are telling each other during the deposition; he's not going to show you his personal telephone.

MR. KOSOGLAD: Can you read the message, please? You don't have to show it to me.

MR. KOLP: Let me see the phone. Slow down. Keep answers short. Stop volunteering answers.

MR. KOSOGLAD: Can you have the witness read the message, please, so it's his testimony?

THE WITNESS: **Slow down. Keep answers short. Stop volunteering answers. Just say I don't recall. Stop volunteering info. Slow down. Stop thinking out loud.**

BY MR. KOSOGLAD: Q. When he said in there, just say I don't recall, was that a plan you guys had going into the deposition?

A. Absolutely not.

Q. So, do you know why he said that to you?

A. No, I do not.

Q. Okay. But yet you don't recall anything about the case, right?

A. Other than –

MR. KOLP: Objection. Argumentative.

BY MR. KOSOGLAD:

Q. You can answer.

A. No. Like I said, this was an unremarkable case to me. Other than reading the reports, that's

-- that's what I recall." (Emphasis added.) (Dkt 70-1, pp. 29-31)

The attorneys then briefly discussed that Kosoglad would make a formal written request for the messages that Jung sent to Frahm during the deposition.

Kosoglad continued questioning Frahm, and then the attorneys resumed discussing whether the defense would produce the text messages prior to Jung's deposition, which was scheduled to occur within a few days of Frahm's. deposition. Kolp stated that the defense would move for a protective order and advised Frahm not to answer questions related to messages exchanged between the officers sent prior to the day of Frahm's deposition. After additional argument between the attorneys, Kolp advised Frahm to answers questions regarding messages exchanged the day before the deposition. Kolp then read aloud the messages, which were related to the logistics of the deposition and also included Jung telling Frahm to be "prepped well tomorrow." (dkt 70-1, pp. 50-51). Kolp agreed to let Kosoglad review the text messages between the officers that were related to this case. Kolp then stated that he would do what he could to get copies of the text messages to Kosoglad by the time of Jung's deposition. (Dkt 70-1, pp. 53-54).

A few days later, Kosoglad took Jung's deposition and immediately questioned the officer about the text messages he sent to Frahm during Frahm's deposition. When asked to explain himself, Jung testified that he was tired and became frustrated because opposing counsel continued to ask the same questions of Frahm, despite receiving identical answers, and Jung was trying to move the deposition along. When asked whether there were any other reasons why Jung sent texts to Frahm, Jung replied that he "thought maybe we would have to do Officer Frahm's deposition over again." (Dkt 70-1, p. 16.) Jung also testified that the officers did not have a preconceived plan about how they were going to approach the deposition. (Dkt. 70-1, p. 18).

Kosoglad extensively questioned Jung about the text messages, consistently circling back to the subject of not only sending the texts during the deposition, but also generally about whether and how the officers communicated about the Randle-El case. Kosoglad also questioned Jung about the circumstances surrounding Randle-El's arrest. He accused defense counsel of suborning perjury and announced that he planned to file a motion for sanctions based on the text

messages. At the end of Jung's deposition, Kolp stated on the record that he denied Kosoglad's allegation of suborning perjury.

After Jung's deposition, Plaintiff filed a motion for sanctions making various arguments, including seeking sanctions for the text messages sent during Frahm's deposition. In denying the motion, the Magistrate Judge found that the actions provided ample impeachment evidence for trial. Plaintiff then filed a motion for reconsideration, asking the Magistrate Judge to reverse its Order denying sanctions, which the Magistrate Judge also denied.

Plaintiff objects to the Magistrate Judge's order denying Plaintiff's motions for sanctions and for partial reconsideration. In the objection, Plaintiff argues that the Magistrate Judge's ruling providing that Defendant Officers' actions could be used as impeachment evidence "does not go far enough" (Dkt 70, p. 6) because the officers "actively and intentionally tried to manipulate evidence" and therefore, the Magistrate Judge's ruling denying sanctions was clearly erroneous.

**Legal Standard**

A district court's review of any discovery-related decisions made by a magistrate judge is governed by Rule 72(a) of the Federal Rules of Civil Procedure. Under Rule 72(a), a district judge may set aside a magistrate judge's ruling on a non-dispositive motion if the order is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). The clear error standard means that the district court may overturn a magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made. *Webb v. CBS Broadcasting, Inc.*, No. 08 C 6241, 2011 WL 842743, at *2-3 (N.D. Ill. March 8, 2011). In general, a magistrate judge's choice between two permissible views of the facts will not meet the clearly erroneous standard. *Id.* at *3.

**Discussion**

Rule 30(d)(2) provides that a court may impose sanctions for a party interposing a delay or acting in a way that frustrates the fair examination of a deponent. See Fed. R. Civ. P. 30(d)(2). Therefore, "if a party impedes the opposing party from completing a fair deposition examination of a witness or party, an appropriate sanction would include attorneys' fees and costs for the deposition impaired by the party using dilatory or obstructive tactics." *Royal Maccabees Life Ins. Co. v. Malachinski*, No. 96-6135, 2001 U.S. Dist. LEXIS 3362.

Courts have broad discretionary powers in imposing sanctions (*Patterson v. Coca-Cola Bottling Co.*, 852 F.2d 280, 283 (7th Cir. 1988)), but should nevertheless apply sanctions proportionate to the subject misconduct (*Williams v. Adams*, 660 F.3d 263, 265-66 (7th Cir. 2011)). Here, the Magistrate Judge denied Plaintiff's motion for sanctions against the police officers and instead found that the officers provided Plaintiff with a "treasure trove of impeachment material." (Dkt. 67, p. 4). This Court agrees and does not find that the Magistrate Judge's decision was clearly erroneous. Plaintiff's trial is set and should it proceed, the officers' behavior during Frahm's deposition will be reviewed by the jury and will go directly to issues of the witnesses' credibility. Plaintiff's counsel, Jared Kosoglad, spent a considerable amount of time during both Frahm and Jung's deposition questioning the officers on the text messages. Kosoglad also inquired into any other communication the officers may have had regarding Randle-El's case.

The Court notes that the conduct exhibited here, in light of the prevalent use of mobile devices, represents a murky area in which deponents would benefit from specific direction as to how to conduct themselves during depositions. Similar to the way in which attorneys instruct deponents regarding when and how breaks will be taken during depositions, attorneys may now find it necessary to instruct deponents on how and when the use of mobile devices are appropriate during depositions. Because there was no instruction given here, and indeed because our rules of civil procedure do not address this issue, the Court finds that the Magistrate Judge did not act erroneously in denying sanctions and ruling that the officers' conduct provides Randle-El with impeachment material.

**Conclusion**

The decision of the Magistrate Judge is affirmed and Randle-El's objection is overruled.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: December 12, 2014

5